**United States Department of Justice**

United States Attorney
Southern District of West Virginia

Robert C. Byrd United States Courthouse
300 Virginia Street, East
Suite 4000
Charleston, WV 25301
1-800-659-8726

Mailing Address
Post Office Box 1713
Charleston, WV 25326
304-345-2200
FAX: 304-347-5104



FILED
AUG 19 2015
TERESA L. DEPPNER, CLERK
U.S. District Court
Southern District of West Virginia

July 29, 2015

Michael W. Carey, Esq.
S. Benjamin Bryant, Esq.
Carey, Scott, Douglas & Kessler, PLLC
901 Chase Tower
707 Virginia Street, East
P.O. Box 913
Charleston, WV  25323

      Re:  United States v. Dennis P. Farrell
            Criminal No. 2:14-00264 (USDC SDWV)

Dear Messrs. Carey and Bryant:

    This will confirm our conversations with regard to your client, Dennis P. Farrell (hereinafter "Mr. Farrell"). As a result of these conversations, it is agreed by and between the United States and Mr. Farrell as follows:

    1.  **PENDING CHARGES.** Mr. Farrell is charged in a Second Superseding Indictment (hereinafter "indictment") as follows:

(a)  Count One charges Mr. Farrell with a violation of 33 U.S.C. §§ 1319(c)(1)(A) and 1311 (Negligent discharge of a pollutant);

(b)  Count Two charges Mr. Farrell with a violation of 33 U.S.C. §§ 407 and 411 (Unlawful discharge of refuse matter (strict liability)); and

(c)  Count Three charges Mr. Farrell with a violation of 33 U.S.C. §§ 1319(c)(1)(A), 1311, and 1318 (Negligent violation of permit condition).

                                                                         Defendant's Initials

Michael W. Carey, Esq.
S. Benjamin Bryant, Esq.
July 29, 2015                               Re: Dennis P. Farrell
Page 2

2. **RESOLUTION OF CHARGES**. Mr. Farrell will plead guilty to Counts Two and Three of said indictment and will not thereafter contest the factual basis or his conviction on either count. Following final disposition, the United States will move the Court to dismiss Count One in Criminal No. 2:14-00264 as to Mr. Farrell.

3. **MAXIMUM POTENTIAL PENALTY**. The maximum penalty to which Mr. Farrell will be exposed by virtue of this guilty plea is as follows:

COUNT TWO

(a) Imprisonment for not less than 30 days and not more than one year;

(b) A fine of up to $25,000 per day of violation. Alternatively, and pursuant to 18 U.S.C. § 3571, a fine of $100,000 or twice the gross pecuniary gain or twice the gross pecuniary loss resulting from defendant's conduct, whichever is greater;

(c) A term of supervised release of one year;

(d) A mandatory special assessment of $25 pursuant to 18 U.S.C. § 3013; and

(e) An order of restitution pursuant to 18 U.S.C. §§ 3563(b) and 3583(d) and USSG §5E1.1(a)(2).

COUNT THREE

(a) Imprisonment for a period of one year;

(b) A fine of not less than $2,500 and up to $25,000 per day of violation. Alternatively, and pursuant to 18 U.S.C. § 3571, a fine of $100,000 or twice the gross pecuniary gain or twice the gross pecuniary loss resulting from defendant's conduct, whichever is greater;

_____
Defendant's Initials

Michael W. Carey, Esq.
S. Benjamin Bryant, Esq.
July 29, 2015                                    Re: Dennis P. Farrell
Page 3

    (c)   A term of supervised release of one year;

    (d)   A mandatory special assessment of $25 pursuant to 18 U.S.C. § 3013; and

    (e)   An order of restitution pursuant to 18 U.S.C. §§ 3563(b) and 3583(d) and USSG §5E1.1(a)(2).

    4.   **SPECIAL ASSESSMENT.** Prior to the entry of a plea pursuant to this plea agreement, Mr. Farrell will tender a check or money order to the Clerk of the United States District Court for $50, which check or money order shall indicate on its face the name of defendant and the case number. The sum received by the Clerk will be applied toward the special assessment imposed by the Court at sentencing. Mr. Farrell will obtain a receipt of payment from the Clerk and will tender a copy of such receipt to the United States, to be filed with the Court as an attachment to this plea agreement. If Mr. Farrell fails to provide proof of payment of the special assessment prior to or at the plea proceeding, the United States will have the right to void this plea agreement. In the event this plea agreement becomes void after payment of the special assessment, such sum shall be promptly returned to Mr. Farrell.

    5.   **RESTITUTION.** The United States and Mr. Farrell agree that, with the exception of costs, if any, incurred by the West Virginia Department of Environmental Protection ("WVDEP") at the Etowah River Terminal facility on and after January 9, 2014, fashioning a restitution order based on the offenses of conviction would unduly complicate and prolong the sentencing process to a degree that outweighs the need to order restitution in Mr. Farrell's case. See 18 U.S.C. § 3663(a)(1)(B)(ii). Mr. Farrell reserves the right to challenge the validity and amount of any order of restitution for costs, if any, incurred by the WVDEP at the Etowah River Terminal facility. However, Mr. Farrell agrees not to appeal any such order of restitution, unless the amount of restitution imposed exceeds $91,860.09.

                                                                    _DPF_
                                                                  Defendant's Initials

Michael W. Carey, Esq.
S. Benjamin Bryant, Esq.
July 29, 2015                                          Re: Dennis P. Farrell
Page 4

    6.    **PAYMENT OF MONETARY PENALTIES.** Mr. Farrell agrees not to object to the District Court ordering all monetary penalties (including the special assessment, fine, court costs, and any restitution that does not exceed the amount set forth in this plea agreement) to be due and payable in full immediately and subject to immediate enforcement by the United States. So long as the monetary penalties are ordered to be due and payable in full immediately, Mr. Farrell further agrees not to object to the District Court imposing any schedule of payments as merely a minimum schedule of payments and not the only method, nor a limitation on the methods, available to the United States to enforce the judgment.

    7.    **COOPERATION**. Mr. Farrell will be forthright and truthful with this office and other law enforcement agencies with regard to all inquiries made pursuant to this agreement, and will give signed, sworn statements and grand jury and trial testimony upon request of the United States. In complying with this provision, Mr. Farrell may have counsel present except when appearing before a grand jury.

    8.    **USE IMMUNITY**. Unless this agreement becomes void due to a violation of any of its terms by Mr. Farrell, and except as expressly provided for in paragraph 10 below, nothing contained in any statement or testimony provided by him pursuant to this agreement, or any evidence developed therefrom, will be used against him, directly or indirectly, in any further criminal prosecutions or in determining the applicable guideline range under the Federal Sentencing Guidelines.

    9.    **LIMITATIONS ON IMMUNITY**. Nothing contained in this agreement restricts the use of information obtained by the United States from an independent, legitimate source, separate and apart from any information and testimony provided pursuant to this agreement, in determining the applicable guideline range or in prosecuting Mr. Farrell for any violations of federal or state laws. The United States reserves the right to prosecute Mr. Farrell for perjury or false statement if such a situation should occur pursuant to this agreement.

                                                                                _/s/ DPF_
                                                                               Defendant's
                                                                               Initials

Michael W. Carey, Esq.  
S. Benjamin Bryant, Esq.  
July 29, 2015                                               Re: Dennis P. Farrell  
Page 5

    10.  **STIPULATION OF FACTS AND WAIVER OF FED. R. EVID. 410.** The United States and Mr. Farrell stipulate and agree that the facts comprising the offenses of conviction include the facts outlined in the "Stipulation of Facts," a copy of which is attached hereto as "Plea Agreement Exhibit A."

    Mr. Farrell agrees that if he withdraws from this agreement, or this agreement is voided as a result of a breach of its terms by him, and he is subsequently tried on any of the charges in the indictment, the United States may use and introduce the Stipulation of Facts in the United States case-in-chief, in cross-examination of Mr. Farrell or of any of his witnesses, or in rebuttal of any testimony introduced by him or on his behalf. Mr. Farrell knowingly and voluntarily waives, see United States v. Mezzanatto, 513 U.S. 196 (1995), any right he has pursuant to Fed. R. Evid. 410 that would prohibit such use of the Stipulation of Facts. If the Court does not accept the plea agreement through no fault of the defendant, or the Court declares the agreement void due to a breach of its terms by the United States, the Stipulation of Facts cannot be used by the United States.

    The United States and Mr. Farrell understand and acknowledge that the Court is not bound by the Stipulation of Facts and that if some or all of the Stipulation of Facts is not accepted by the Court, the parties will not have the right to withdraw from the plea agreement.

    11.  **AGREEMENT ON SENTENCING GUIDELINES.** The United States and Mr. Farrell agree that the following provisions of the United States Sentencing Guidelines apply to this case.

USSG §2Q1.3

| | |
|---|---|
| Base offense level | 6 |
| Ongoing, continuous discharge | + 6 |

_____  
Defendant's Initials

Michael W. Carey, Esq.  
S. Benjamin Bryant, Esq.  
July 29, 2015                                    Re: Dennis P. Farrell  
Page 6

```
Disruption of public utility or
  substantial expenditure in cleanup      + 4

Discharge without a permit                + 4
                                          ___

Adjusted offense level                     20
```

The United States and Mr. Farrell acknowledge and understand that the Court and the Probation Office are not bound by the parties' calculation of the United States Sentencing Guidelines set forth above and that the parties shall not have the right to withdraw from the plea agreement due to a disagreement with the Court's calculation of the appropriate guideline range.

12. **WAIVER OF APPEAL AND COLLATERAL ATTACK.** Mr. Farrell knowingly and voluntarily waives his right to seek appellate review of his conviction and of any sentence of imprisonment, fine, or term of supervised release imposed by the District Court, or the manner in which the sentence was determined, on any ground whatsoever including any ground set forth in 18 U.S.C. § 3742(a), except that the defendant may appeal any sentence that exceeds the maximum penalty prescribed by statute. The United States also agrees to waive its right to appeal any sentence of imprisonment, fine, or term of supervised release imposed by the District Court, or the manner in which the sentence was determined, on any ground whatsoever, including any ground set forth in 18 U.S.C. § 3742(b), except that the United States may appeal any sentence that is below any minimum penalty prescribed by statute.

Mr. Farrell also knowingly and voluntarily waives the right to challenge his guilty plea and conviction resulting from this plea agreement, and any sentence imposed for the conviction, in any collateral attack, including but not limited to a motion brought under 28 U.S.C. § 2255.

The waivers noted above shall not apply to a post-conviction collateral attack or direct appeal based on a claim of ineffective assistance of counsel.

_/s/ DPF_  
Defendant's Initials

Michael W. Carey, Esq.  
S. Benjamin Bryant, Esq.  
July 29, 2015                                          Re: Dennis P. Farrell  
Page 7

    13.  **WAIVER OF FOIA AND PRIVACY RIGHT**. Mr. Farrell knowingly and voluntarily waives all rights, whether asserted directly or by a representative, to request or receive from any department or agency of the United States any records pertaining to the investigation or prosecution of this case, including without any limitation any records that may be sought under the Freedom of Information Act (FOIA), 5 U.S.C. § 552, or the Privacy Act of 1974, 5 U.S.C. § 552a, following final disposition.

    14.  **FINAL DISPOSITION**. The matter of sentencing is within the sole discretion of the Court. The United States has made no representations or promises as to a specific sentence. The United States reserves the right to:

    (a)  Inform the Probation Office and the Court of all relevant facts and conduct;

    (b)  Present evidence and argument relevant to the factors enumerated in 18 U.S.C. § 3553(a);

    (c)  Respond to questions raised by the Court;

    (d)  Correct inaccuracies or inadequacies in the presentence report;

    (e)  Respond to statements made to the Court by or on behalf of Mr. Farrell;

    (f)  Advise the Court concerning the nature and extent of Mr. Farrell's cooperation; and

    (g)  Address the Court regarding the issue of Mr. Farrell's acceptance of responsibility.

    15.  **VOIDING OF AGREEMENT**. If either the United States or Mr. Farrell violates the terms of this agreement, the other party will

                                                               Defendant's Initials

Michael W. Carey, Esq.
S. Benjamin Bryant, Esq.
July 29, 2015                                    Re: Dennis P. Farrell
Page 8

have the right to void this agreement. If the Court refuses to accept this agreement, it shall be void.

16.  **ENTIRETY OF AGREEMENT**. This written agreement constitutes the entire agreement between the United States and Mr. Farrell in this matter. There are no agreements, understandings or recommendations as to any other pending or future charges against Mr. Farrell in any Court other than the United States District Court for the Southern District of West Virginia.

Acknowledged and agreed to on behalf of the United States:

R. BOOTH GOODWIN II
United States Attorney

By: *[signature]*
PHILIP H. WRIGHT
Assistant United States Attorney


PHW/vld

I hereby acknowledge by my initials at the bottom of each of the foregoing pages and by my signature on the last page of this nine-page agreement that I have read and carefully discussed every part of it with my attorneys, that I understand the terms of this agreement, and that I voluntarily agree to those terms and conditions set forth in the agreement. I further acknowledge that my attorneys have advised me of my rights, possible defenses, the Sentencing Guideline provisions, and the consequences of entering into this agreement, that no promises or inducements have been made to me other than those in this agreement, and that no one has threatened me or forced me in any way to enter into this agreement. Finally, I am satisfied with the representation of my attorneys in this matter.

*[initials]*
_____
Defendant's Initials

Michael W. Carey, Esq.
S. Benjamin Bryant, Esq.
July 29, 2015					Re: Dennis P. Farrell
Page 9

_____			_____
Dennis P. Farrell					Date Signed  8/10/15
Defendant


_____			_____
Michael W. Carey, Esq.				Date Signed  8/10/15
Counsel for Defendant


_____			_____
S. Benjamin Bryant, Esq.				Date Signed  Aug. 10, 2015
Counsel for Defendant

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON

**UNITED STATES OF AMERICA**

v.                                      **CRIMINAL NO. 2:14-cr-00264**

**DENNIS P. FARRELL**

## STIPULATION OF FACTS

The United States and Dennis P. Farrell ("Farrell") stipulate and agree that the facts comprising the offenses of conviction, Counts Two and Three of the Second Superseding Indictment (the "Indictment"), include the following:

1. <u>The Chemical Spill of January 9, 2014</u>

On January 9, 2014, a chemical leak was discovered at an above-ground storage-tank farm located on the east bank of the Elk River, on Barlow Drive in Charleston, West Virginia, within the Southern District of West Virginia. The tank farm, known as the Etowah River Terminal ("Etowah Facility"), was owned by Freedom Industries, Inc. ("Freedom"), a West Virginia corporation.

Freedom used the Etowah Facility to store and process chemicals and other substances, including a substance that was used in the coal-mining industry as a cleansing agent and which consisted primarily of the chemical 4-methylcyclohexanemethanol. That substance, both in the form as Freedom originally purchased it and in the form after Freedom processed it, was commonly referred to (and will be referred to hereinafter) as "MCHM."

The leak that occurred on January 9, 2014, consisted of MCHM, which leaked from two holes in the floor of Tank 396 at the Etowah Facility. A substantial amount of the leaked MCHM pooled around the northwest side of Tank 396. Some MCHM breached

_____
Defendant's Initials

**PLEA AGREEMENT EXHIBIT A**

1

containment, ran down the riverbank and discharged into the Elk River at two or more discernible, confined and discrete channels or fissures. The discharge of MCHM into the Elk River continued for several days.

After it leaked from Tank 396, the MCHM was a pollutant as defined in the Clean Water Act, 33 U.S.C. § 1362(6), as well as "refuse" for the purposes of 33 U.S.C. § 407. The Elk River was, and is, a navigable water of the United States. Freedom did not have a permit issued pursuant to the Clean Water Act to discharge MCHM into the Elk River.

2.  Freedom and Farrell

For many years, and all times pertinent to the Indictment, Freedom and its affiliated companies, including Etowah River Terminal, LLC ("Etowah River"), and Poca Blending, LLC, were engaged in the business of storing and selling chemicals and other substances used in various industries such as the coal-mining industry. Etowah River was formed in 2001 to purchase the Etowah Facility. (Poca Blending operated a chemical-processing site in Nitro, West Virginia.) At all times pertinent to the Indictment, Etowah River acted on behalf of and with the intent to benefit Freedom. (Hereinafter, all references to Freedom will include Etowah River.) Freedom began operating the Etowah Facility in October 2001.

Farrell and two other owners of Freedom were the "members" of Etowah River LLC until December 6, 2013, when they sold their interests, that is, their membership units, to Chemstream. Chemstream agreed to pay approximately $20 million for Freedom and Etowah River LLC.

From a date no later than October 2001 through approximately December 6, 2013, Farrell served as the president of Freedom and as a member of Freedom's board of directors. After December 6, 2013, Farrell continued to work at the Etowah Facility and described himself occasionally as Freedom's president.

Farrell was a responsible corporate officer of Freedom from no later than October 2001 through at least December 6, 2013,

_____
Defendant's Initials

**PLEA AGREEMENT EXHIBIT A**

2

having the responsibility and authority, along with others, to ensure that Freedom complied with all laws, including environmental laws.

3. <u>The NPDES Permit</u>

Freedom operated the Etowah Facility pursuant to a "Multi-Sector General Water Pollution Control Permit," No. WV0111457, Registration No. WVG610920 ("The Permit"), that was issued by the State of West Virginia, Department of Environmental Protection, under the National Pollutant Discharge Elimination System ("NPDES"), 33 U.S.C. § 1342. The Permit, which was in effect at all relevant times, contained a condition that required Freedom to develop and implement a storm-water pollution prevention plan ("storm-water plan"), as well as a groundwater protection plan ("groundwater plan"). That condition further required that a storm-water plan include and implement certain controls to prevent pollution, including inspection and testing of plant equipment and systems. The condition thus implemented section 1311 of the Clean Water Act, that is, 33 U.S.C. § 1311 ("Effluent limitations"), by requiring that certain practices be put into place to "reduce the pollutants in stormwater discharges associated with industrial activity." The condition requiring the development of the storm-water plan also implemented section 1318 of the Clean Water Act, that is, 33 U.S.C. § 1318 ("Records and reports"), by requiring that Freedom maintain the storm-water plan (as well as the groundwater plan) as a required report that should be available to the public pursuant to section 1318(b).

The Permit authorized Freedom to discharge storm water into navigable waters, subject to monitoring and reporting requirements for certain pollutants, but it did not allow for the discharge of MCHM into any navigable waters. Freedom had no permit authorizing any such discharge.

4. <u>Negligence – Failure to Have and Implement an SWPPP/GPP</u>

Among other things, and as set forth above, the Permit required Freedom to develop, implement, and maintain a storm-water plan and a groundwater plan for the Etowah Facility. The Permit further required that the storm-water plan include and

_____
Defendant's Initials

**PLEA AGREEMENT EXHIBIT A**

3

implement certain controls to prevent pollution, including appropriate inspections and testing of plant equipment and systems. The Permit also required the groundwater plan to be in accord with certain State regulations, which in turn required a tank farm to have secondary containment capable of holding a spill from an above-ground storage tank for up to 72 hours. In addition, the Permit required Freedom to review its storm-water pollution controls annually, and to revise and augment the storm-water plan as necessary.

As one of Freedom's responsible corporate officers, Farrell had the responsibility and the authority, along with others, to ensure that Freedom and the Etowah Facility were operated in compliance with the law, including all environmental laws and the Permit. Farrell was aware of the Permit, knew that the Etowah Facility's operations were subject to the Permit, and knew that Freedom was required to have a storm-water plan.

In particular, as a responsible corporate officer for Freedom, Farrell had the responsibility and the authority, along with others, to ensure that Freedom complied with the Permit condition requiring that a storm-water plan and groundwater plan be developed, implemented and maintained. Farrell, however, failed to exercise his authority and fulfill his responsibility in that Freedom never developed a final storm-water plan (or a groundwater plan) for the Etowah Facility, signed in accordance with law, and never implemented a storm-water plan while Farrell was a responsible corporate officer of Freedom, from October 2001 through and including January 9, 2014.

The negligence of Farrell as a responsible corporate officer of Freedom, along with others, in failing to ensure that a storm-water plan and a groundwater plan for the Etowah Facility were developed and implemented, was a proximate and contributing cause, albeit not the only proximate or contributing cause, of the discharge of a quantity of MCHM into the Elk River from the Etowah Facility on January 9, 2014.

This Stipulation of Facts does not contain each and every relevant fact known to Farrell and to the United States. The facts contained herein are set forth for the limited purpose of

_____
Defendant's Initials

**PLEA AGREEMENT EXHIBIT A**

4

establishing a factual basis for Mr. Farrell's guilty pleas in accordance with the plea agreement.

Stipulated and agreed to:

_____    _____8/10/15_____
Dennis P. Farrell                  Date
Defendant

_____    _____8/10/15_____
Michael W. Carey, Esq.             Date
Counsel for Defendant

_____    _____8/10/15_____
S. Benjamin Bryant, Esq.           Date
Counsel for Defendant

_____    _____8/11/15_____
Philip H. Wright                   Date
Assistant United States Attorney

_____
Defendant's
Initials

**PLEA AGREEMENT EXHIBIT A**

5

```
Court Name: US District Court/SDWV
Division: 2
Receipt Number: CHA050977?
Cashier ID: mwalmoth
Transaction Date: 08/19/2015
Payer Name: LARRY SCOTT DOUGLAS AND KEIS
E

CRIMINAL DEBT
 For: DENNIS P FARREL
 Case/Party: D-WVS-2-14-CR-000264-006
 Amount:         $50.00

CREDIT CARD
 Amt Tendered: $50.00

Total Due:      $50.00
Total Tendered: $50.00
Change Amt:      $0.00


Only when cash clears the check,
money order, or verified credit is
made is the fee or debt officially
paid or discharged. A $45 fee will
be charged for a returned check.
```